16-163-cr
United States v. Chambers

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of March, two thousand seventeen.

PRESENT: REENA RAGGI,
RAYMOND J. LOHIER, JR.,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

------------------------------------------------------------------------
UNITED STATES OF AMERICA,

*Appellee*,

v.                                                          No. 16-163-cr

ANTOINE CHAMBERS, AKA "Sealed Defendant 1,"
AKA "Twizzie,"

*Defendant-Appellant*,

STEVEN GLISSON, AKA "D," AKA "Sealed Defendant 1," TYRONE BROWN,

*Defendants*.[*]

------------------------------------------------------------------------
APPEARING FOR APPELLANT:      JOSHUA   L.   DRATEL   (Whitney   G.
Schlimbach, Of Counsel, *on the brief*), Joshua L. Dratel, P.C., New York, New York.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

1

APPEARING FOR APPELLEE:    NEGAR TEKEEI, Assistant United States Attorney (Amy Lester, Michael Ferrara, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on December 21, 2015, is AFFIRMED.

Defendant Antoine Chambers stands convicted after a jury trial of conspiratorial and substantive Hobbs Act robbery, *see* 18 U.S.C. § 1951, and kidnapping, *see* 18 U.S.C. § 1201, for which crimes he is serving a 20-year term of incarceration. On appeal, Chambers challenges, both individually and cumulatively: (1) the sufficiency of the evidence supporting his conviction; (2) the admission of identification testimony at trial; (3) the government's failure to make disclosures required by *Brady v. Maryland*, 373 U.S. 83 (1963); (4) the admission of cell-site location evidence; and (5) the constitutionality of the federal kidnapping statute. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Sufficiency of the Evidence

Although we review a sufficiency challenge *de novo*, Chambers bears "a very heavy burden," *United States v. Abu-Jihaad*, 630 F.3d 102, 135 (2d Cir. 2010) (internal quotation marks omitted), because we must view the evidence as a whole and in the light

2

most favorable to the jury's verdict, and we must affirm if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord United States v. Binday*, 804 F.3d 558, 572 (2d Cir. 2015). In doing so, we recognize that a jury may base its verdict on "inferences drawn from circumstantial evidence," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks omitted), and that we must defer to its assessment of witness credibility and its resolution of conflicting testimony, *see United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008).

Chambers argues that no rational factfinder could have found him guilty beyond a reasonable doubt of the charged crimes after, at trial, (a) robbery and kidnapping victim Emma Torruella recanted on redirect examination her identification of Chambers on direct examination; and (b) the district court struck pre-trial and trial identifications by Torruella's daughter, Demi Torres. We conclude otherwise.

When we view the record in the light most favorable to the jury's verdict, we must assume that the jury found Torruella's trial identification of defendant (and her unrecanted pre-trial identification) credible and rejected her subsequent recantation. The jury was uniquely situated to assess Torruella's credibility in light of her highly emotional state—which is evident even on the cold record—and to credit parts of her testimony while rejecting others. *See United States v. Mergen*, 764 F.3d 199, 204 (2d Cir. 2014) (deferring to jury assessment of witness credibility); *United States v. Sabhnani*, 599 F.3d 215, 235 (2d Cir. 2010) (stating that jury can assess credibility based on witness demeanor); *United States v. Messina*, 806 F.3d 55, 64 (2d Cir. 2015) (stating

3

that factfinder can accept some portions of witness's testimony and reject others); *see also Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (stating that, when witness makes contradictory statements, including recantations, factfinder can determine "whether one statement is more truthful than the other").

In any event, Torruella's identification was not the only evidence supporting the jury's verdict. Considerable circumstantial evidence also demonstrated Chambers's guilt. For example, shortly before the charged crimes were initiated at the home of co-conspirator Tyrone Brown, Brown was in frequent cellphone communication with a number entered in his cellphone as belonging to "Twizie." Cell-site records located the Twizie phone in the vicinity of Brown's home at this time. Chambers's identity as "Twizzie" was established through the testimony of a schoolmate who knew him by that nickname, and by Chambers himself, who admitted to police that he had used another phone number, also listed under "Twizie" in Brown's cellphone contacts, to place an unrelated earlier call. Cellphone records showed that, shortly after police contacted Brown about the crimes at issue, Brown called the Twizie cellphone, after which that cellphone's sites changed from the Bronx to New Jersey to Pennsylvania.

Other evidence indicated that the partial license plate number that Torruella recalled for the car in which she was kidnapped was registered to Chambers's girlfriend. Moreover, some months later, when that car was impounded following a traffic stop, it was found to contain a hammer, which David Barea, Torruella's drug-dealing boyfriend, testified he believed was used to beat him throughout the robbery and kidnapping.

4

Finally, when Chambers was arrested in New Jersey, driving a rental car not registered to him, he provided false identification.

Viewing the evidence in the light most favorable to the guilty verdict, a reasonable juror could have found, as the district court observed, "that [Chambers] is Twizzie; that he (and not merely his phone) went to Brown's apartment the night of the robbery; that the robbers used the dark-colored, four-door sedan that belonged to [Chambers's] girlfriend, with license plate number ending in 7788, precisely the numbers provided by one of the victims; that [Chambers] beat Barea with the hammer found in his girlfriend's car; that Brown informed [Chambers] of the police investigation the day after the robbery causing him to flee New York for Pennsylvania; and that [Chambers's] arrest in New Jersey near the Pennsylvania border two months later and his false statements post-arrest constituted evidence of flight and consciousness of guilt." J.A. 1024.

In sum, because a reasonable jury could have found from the totality of this evidence that Chambers was guilty of the charged crimes, his sufficiency challenge fails on the merits.

2.    Eyewitness Identifications

Chambers argues that the district court erred in admitting Torruella's and Torres's pre-trial and trial identifications without holding a hearing as to their reliability.

Due process precludes the admission of identification evidence prompted by suggestive government procedures giving rise to "a very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) (internal quotation marks omitted). "Short of that point," however, identification

5

testimony is "for the jury to weigh," even if marked by "some element of untrustworthiness." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Indeed, identification evidence following unduly suggestive procedures may still be admitted if the district court determines that the identification was independently reliable, an assessment informed by five factors: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of witness certainty at the time of identification, and (5) the time between the crime and the confrontation producing identification. *See id.* at 114 (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

Whether a pre-trial hearing is necessary to assess the reliability of witness identification is a matter committed to the sound discretion of the district court, which we will not upset except for abuse. *See United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). We review the district court's factual findings relating to identification evidence only for clear error. *See id.* With the benefit of hindsight, it appears that the district court would have been well advised to conduct a pre-trial hearing in this case. Nevertheless, when we consider the facts known to the district court at the time it made its decision, we identify neither abuse of discretion nor clear error here.

a. Identification by Torres

Insofar as Chambers challenges the district court's admission of Torres's identifications, and particularly its doing so without a pre-trial hearing, we need not decide whether there was error because it was rendered harmless in any event by the

6

district court's decision to strike all evidence of Torres's identifications when her trial testimony revealed previously undisclosed potentially suggestive procedures. *See Wray v. Johnson*, 202 F.3d 515, 525 (2d Cir. 2000) (holding that erroneous admission of unreliable identification testimony does not warrant relief from conviction if error is harmless). In doing so, the district court specifically and repeatedly charged the jury that Torres's identification testimony must be disregarded in its deliberations. Neither party objected to the instruction nor maintained that it was inadequate. We presume that juries follow limiting instructions unless there is an overwhelming probability that the jury will be unable to do so, and the evidence is devastating to the defense. *See, e.g.*, *United States v. Becker*, 502 F.3d 122, 130–31 (2d Cir. 2007). These concerns are not evident here where defense counsel's skillful cross-examination of Torres made clear why her identifications were unreliable in light of suggestive procedures (thereby avoiding jury speculation as to the reason for the district court's decision to strike); the district court carefully redacted Torres's testimony before responding to a jury request and reiterated its instruction to disregard the stricken identification evidence; and other evidence, already discussed, convincingly linked Chambers to the crimes charged.

      b.     <u>Identification by Torruella</u>

Chambers also faults the district court for admitting Torruella's identifications without a reliability hearing because (1) he was the only person depicted in both photo arrays shown to her, albeit in different pictures; and (2) Detective Deloren instructed Torruella, in looking at the second photo array from which she identified Chambers, to

7

"forget about the teardrop" tattoo she remembered on the robber's face. Appellant's Br. 56.

As to the first argument, this court has ruled that inclusion of a suspect's picture "in a second [photo] array after a witness ha[d] failed to select anyone [including the suspect] from the first" does not "automatically make the second array unduly suggestive." *United States v. Concepcion*, 983 F.2d 369, 379 (2d Cir. 1992); *accord McKinnon v. Superintendent*, 422 F. App'x 69, 74–75 (2d Cir. 2011). This case is not to the contrary, particularly as two different pictures of Chambers were used and the arrays were not composed to highlight either.

As to the second argument, Chambers fails to indicate how Detective Deloren's comment rendered the identification procedure suggestive. The record is ambiguous as to whether the challenged comment came before or after Torruella had made a tentative initial identification. If made after Torruella had picked out Chambers's photo, the concern would be bolstering. If made before the picture selection, the comment, at most, may have encouraged an identification from the second photo array, but it would not have focused particular attention on Chambers. In either case, the comment did not create "a very substantial likelihood of irreparable misidentification" by a witness who had had ample opportunity to view Chambers after he removed his mask and whose attention was evident from her ability to recall a partial license plate number. *Perry v. New Hampshire*, 565 U.S. at 232 (internal quotation marks omitted); *see Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) (observing that suggestiveness finding depends on "whether procedure was 'so . . . conducive to irreparable mistaken identification that

8

[defendant] was denied due process of law'" (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967))).

On this record, we conclude that the district court did not abuse its discretion in first deciding that it could rule on the admissibility of Torruella's identification evidence without a pre-trial evidentiary hearing. Nor can we identify error in the district court's determination that the record weighed in favor of admitting Torruella's identifications. The fact that Torruella, after making an identification on direct examination, recanted on redirect was a matter for the jury to weigh.

Accordingly, Chambers's challenges to identification testimony present no error warranting relief from judgment.

3.    *Brady* Challenge

A defendant arguing *Brady* error must show (1) the existence of exculpatory or impeachment evidence favorable to the defense, (2) the government's suppression of such evidence, and (3) ensuing prejudice. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *accord United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005). A defendant cannot carry his second-step burden where the prosecution discloses the information at issue "in sufficient time to afford the defense an opportunity for use." *Leka v. Portuondo*, 257 F.3d 89, 103 (2d Cir. 2001). To carry the third-step burden, a defendant must show that the evidence was material, *i.e.*, that "there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different," which itself occurs where the failure to disclose "undermines confidence in the outcome of the trial." *United States v. Spinelli*, 551 F.3d 159, 164–65 (2d Cir. 2008) (quoting

9

*Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)).  To meet its *Brady* obligations, the prosecution is obligated to "'learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police,'" and is thus "presumed . . . to have knowledge of all information gathered in connection with [the] office's investigation of the case."  *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles v. Whitley*, 514 U.S. at 437).

Applying these principles here, we identify no *Brady* concern as to interview notes revealing that, after Detective Deloren showed Torres a newspaper photograph of Chambers, she conducted a Google search of his name.  Those notes were concededly provided to Chambers pursuant to 18 U.S.C. § 3500 and cannot be deemed "suppressed" because Chambers was able to move to exclude Torres's identification testimony prior to trial based on the notes.  Indeed, defense counsel even referenced the Google search in his opening statement.

Chambers next points to a thumbnail-sized photograph of himself, also produced in the prosecution's § 3500 disclosure.  Chambers surmises that this is one of the single photos shown to Torres on multiple occasions by Deloren, the revelation of which procedure at trial prompted the district court to strike Torres's identification testimony.  Assuming the truth of this surmise, this evidence was clearly within the detective's knowledge and, therefore, imputed to the prosecution.  *See United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006).

Nevertheless, any failure of pre-trial disclosure regarding use of the photo affords Chambers no relief from judgment because he cannot show prejudice in light of the

10

action taken by the district court. By striking Torres's identification evidence in its entirety and repeatedly instructing the jury to disregard such evidence in its deliberations, the district court satisfactorily ensured that the outcome of the proceeding was not affected by that evidence or by undisclosed procedures used in connection with those identifications. In these circumstances, the alleged *Brady* violation does not undermine confidence in the outcome of the trial.

In urging otherwise, Chambers argues that the prosecution here violated its "fundamental duty to ensure that testimony elicited from government witnesses is true." Appellant's Br. 74. We do not understand Chambers to be charging the prosecution with knowingly proffering false or misleading testimony in this case. Rather, we understand him to be arguing prosecutorial negligence in failing to elicit from its witnesses prior to trial facts casting doubt on the reliability of Torres's identifications. To be sure, the prosecution is obliged diligently to ascertain the circumstances attending pre-trial identifications. But whether or not there was diligence here, the district court's striking of Torres's identifications and its instructions to disregard that evidence adequately safeguarded against prejudice.

Accordingly, we reject Chambers's *Brady* claim on the merits.

4. Cell-Site Location Information Challenge

Chambers argues that cell-site location information for the Twizie cellphone, obtained pursuant to the Stored Communications Act ("SCA"), *see* 18 U.S.C. § 2703(c), should have been suppressed because the government's authorization application failed to satisfy the statute's "specific and articulable" facts standard, *id.* § 2703(d), and because

11

the SCA, to the extent it authorizes disclosure on less than probable cause, violates the Fourth Amendment. Both arguments fail on the merits and, thus, we need not decide whether Chambers demonstrated a reasonable expectation of privacy in the Twizie cellphone, whether a suppression remedy is available under the SCA, or whether the third-party disclosure or good-faith doctrines apply here.

To secure a § 2703(c)(1) disclosure order, the government must offer "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d); *see United States v. Bayless*, 201 F.3d 116, 132–33 (2d Cir. 2000) (recognizing that "specific and articulable" showing is lower than probable cause standard required for search warrant). The government convincingly carried its specific-and-articulable-facts burden by stating that (1) it was then investigating Chambers's possible involvement in a Hobbs Act robbery occurring on March 25, 2013, in an apartment at 1338 Croes Avenue in the Bronx; (2) a consent search of another suspect's cellphone (identified at trial as Brown) revealed two phone numbers associated with the name "Twizie"; (3) "the only calls of duration made or received by" the suspect (Brown) on the night of the robbery were to one of the Twizie cellphones; (4) the other Twizie phone had been used some time earlier to make a 911 call by a man who provided the name "Antoine" and who placed the call from 4782 Barnes Avenue in the Bronx; (5) the landlord of that Barnes Avenue address identified Antoine Chambers as the resident; and (6) a vehicle parked outside 4782 Barnes Avenue registered to Chambers's girlfriend bore a license plate, six of the seven

12

digits/letters of which matched those provided by one of the robbery victims as on the license plate of the car driven by the robbers. J.A. 59–65. These facts are sufficiently specific and articulable not only to demonstrate that the sought information would be relevant and material to the ongoing investigation, but also to demonstrate probable cause to think that the sought information would be evidence of a crime. *See Illinois v. Gates*, 462 U.S. 213, 231–32, 238–39 (1983); *accord Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (recognizing that probable cause is flexible standard dealing in probabilities rather than certainties).

5. Kidnapping Statute Challenge

   a. Facial Challenge

Chambers asserts that the federal kidnapping statute, 18 U.S.C. § 1201, is unconstitutional on its face as exceeding Congress's power to legislate under the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3. In reviewing that challenge *de novo*, *see United States v. Pettus*, 303 F.3d 480, 483 (2d Cir. 2002), we are mindful that facial challenges to a legislative enactment are "the most difficult . . . to mount successfully" because the challenger "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015). That is not this case.

The Supreme Court has recognized Congress's authority under the Commerce Clause to regulate: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce,

13

even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (citation omitted). In invalidating the statute at issue in *Lopez*, the Supreme Court observed that it contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the [activity] in question affects interstate commerce." *Id.* at 561. Chambers argues that the federal kidnapping statute suffers from this same defect under the third *Lopez* category.

The argument fails because the challenged law here is properly evaluated under the second, not third, category, *i.e.*, "instrumentalities of interstate commerce." *See United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2000) ("A showing that a regulated activity substantially affects interstate commerce (as required for the third category) is not needed when Congress regulates activity in the first two categories."). The express language of § 1201 makes it a federal crime to use "the mail or any means, facility, or instrumentality of interstate or foreign commerce" in committing kidnapping. 18 U.S.C. § 1201. In short, because the use of an instrumentality of interstate commerce is an element that must be proved in every § 1201 case, Congress's enactment of that statute did not exceed its Commerce Clause authority. *See United States v. Giordano*, 442 F.3d 30, 38, 41 (2d Cir. 2006) (rejecting constitutional challenge to law prohibiting use of "the mail or any facility or means of interstate or foreign commerce" to entice a minor to engage in sexual activity, 18 U.S.C. § 2425, because statute was "clearly founded on the second type of Commerce Clause power categorized in *Lopez*," which allowed Congress

14

"to regulate and protect the instrumentalities of interstate commerce even though the threat may only come from intrastate activities" (internal quotation marks omitted)).

Accordingly, Chambers's facial challenge to § 1201 fails on the merits.

b.    As Applied Challenge

Chambers argues that, even if § 1201 is not unconstitutional on its face, the law was unconstitutionally applied in his case because the use of instrumentalities of interstate commerce, specifically, cellphones, was too attenuated from the kidnapping to fall within Congress's Commerce Clause authority. We are not persuaded.

Evidence showed the conspirators' frequent use of cellphones throughout the robbery and kidnapping at issue. Brown used a cellphone to communicate with victim Barea shortly before the crimes, which took place when Barea arrived at Brown's home. In the hour before the crimes, Brown communicated a number of times with Chambers, using one of the Twizie phones. Even if we were to conclude that at the time of these cellphone uses, the plan was to commit only robbery, Barea testified that coconspirator Glisson made multiple phone calls during the kidnapping. Thus, the jury could conclude that cellphone use was not "casual and incidental" to the kidnapping, but an important tool for the conspirators to coordinate their activities during the commission of that crime as well as the related robbery. *United States v. Archer*, 486 F.2d 670, 682 (2d Cir. 1973) (Friendly, J.) (internal quotation marks omitted). Accordingly, we identify no unconstitutional application here of Congress's authority to regulate instrumentalities of interstate commerce when used in other criminal activity. *See generally United States v. Holston*, 343 F.3d 83, 90–91 (2d Cir. 2003) (stating that "nexus to interstate commerce is

15

determined by the class of activities regulated by the statute as a whole, not by the simple act for which an individual defendant is convicted" (alterations and internal quotation marks omitted)).

6.      Conclusion

The errors argued by Chambers were either harmless or not errors. Thus, considered individually or cumulatively, they afford no relief from judgment. *See In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 147 (2d Cir. 2008) (observing that "cumulative error doctrine comes into play only where the total effect of the errors found casts such a serious doubt on the fairness of the trial that the conviction[] must be reversed" (alterations and internal quotation marks omitted)). We have considered Chambers's remaining arguments and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court