U.S. v. Georgescu

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 27th day of October, two thousand seventeen.

Present:     JOHN M. WALKER, JR.,
             ROSEMARY S. POOLER,
                      *Circuit Judges*.
             GEOFFREY W. CRAWFORD,[1]
                      *District Judge*.

---

UNITED STATES OF AMERICA,

                      *Appellees*,

             v.                                          16-4159-cr

VIRGIL FLAVIU GEORGESCU,

                      *Defendant-Appellant*.

---

Appearing for Appellant:     Steven M. Witzel, Fried, Frank, Harris, Shriver, & Jacobson LLP
                             (Jennifer L. Colyer, Michael P. Sternheim, *on the brief*), New
                             York, NY

---

[1] Judge Geoffrey W. Crawford, United States District Court for the District of Vermont, sitting by designation.

Appearing for Appellee:  Andrea L. Surratt, Assistant United States Attorney, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York (Ilan Graff, Karl Metzner, Assistant United States Attorneys, *on the brief*), New York, NY.

Appeal from the United States District Court for the Southern District of New York (Abrams, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant Virgil Flaviu Georgescu appeals from the December 6, 2016 judgment of the United States District Court for the Southern District of New York (Abrams, *J.*), finding him guilty of conspiracy to kill officers and employees of the United States, in violation of 18 U.S.C. §§ 1117, 3238 and conspiracy to provide material support or resources to a foreign terrorist organization, in violation of 18 U.S.C. §§ 2339B(a)(1), 2339B(d)(1)(C), 2339B(d)(1)(D), 2339B(d)(1)(E), 3238. Specifically, Georgescu challenges the jury instructions regarding negation of intent and the entrapment by estoppel defense. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"To secure reversal based on a flawed jury instruction, a defendant must demonstrate both error and ensuing prejudice." *U.S. v. Quinones*, 511 F.3d 289, 313 (2d Cir. 2007) (citation omitted). We review jury instructions de novo to determine whether they were erroneous. *Id.* at 314; *see also U.S. v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012). An erroneous jury charge is prejudicial when it "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994); *see also Quinones*, 511 F.3d at 314.

A criminal defendant prevails on an entrapment by estoppel defense if he can show that "the government, by its own actions, induced him to do [criminal conduct] and led him to rely reasonably on his belief that his actions would be lawful by reason of the government's *seeming* authorization." *U.S. v. Giffen*, 473 F.3d 30, 41 (2d Cir. 2006) (emphasis in original). The district court instructed the jury of the availability of this defense to Georgescu.

Georgescu's sole contention with respect to this aspect of the jury instructions is that it improperly focuses on whether "a government official made *affirmative* statements" and engaged in "*affirmative* conduct" that led Georgescu to believe he was authorized to act as he did. He argues the balance of our prior decisions indicates that providing evidence of affirmative statements or conduct by a government agent is not required in this context.

These arguments are unconvincing. We have never wavered from the proposition that defendants asserting entrapment by estoppel must show that their belief that they were authorized to commit the conduct in question is rooted in actual words or deeds by an actual agent of the government. *See Giffen*, 473 F.3d at 41 ("when the government, *by its own actions*, induced him to do those acts…") (emphasis added); *U.S. v. Abcasis*, 45 F.3d 39, 43 (2d Cir. 1995) ("If a drug enforcement agent *solicits* a defendant…or *effectively communicates an assurance*…") (emphasis added); *U.S. v. Gil*, 297 F.3d 93, 107 (2d Cir. 2002) ("[t]his defense

2

arises where a government agent *authorizes* a defendant…") (emphasis added).[1] There are various ways to express this requirement. In *U.S. v. Miles*, our most recent opinion on the subject, we did so by saying that "a defendant must show an *affirmative* assurance from the government that his conduct was legal." 748 F.3d 485, 489 (2d Cir. 2014) (emphasis added). And in *Abcasis*, our first opinion on the subject, we approvingly discussed our sister circuit's formulation that entrapment by estoppel "is warranted where a government agent *affirmatively* misleads a defendant as to the lawfulness of his conduct." 45 F.3d at 43 (emphasis added).

It may be the case that in some circumstances the word "affirmative" would mislead a jury into focusing on the government agent's intentions rather than the defendant's reasonable interpretation of that agent's actions. Certainly including "affirmative" is not *required* in jury instructions for entrapment by estoppel. As we have frequently held, the meaning of jury instructions is to be taken as a whole, not through word-by-word parsing. *See*, *e.g.*, *U.S. v. Mulder*, 273 F.3d 91, 105 (2d Cir. 2001) (citation omitted); *Victor v. Nebraska*, 511 U.S. 1, 16 (1994). Here, the District Court's jury instructions unambiguously point jurors to the Georgescu's interpretation of a government agent's actions, not to the actual intent behind those actions.

We find Georgescu's argument that he should have been entitled to a separate jury instruction on negation of intent equally unavailing. Negation of intent "is not an affirmative defense, but rather an attempt to rebut the government's proof of the intent element of a crime by showing that the defendant had a good-faith belief that he was acting with government authorization." *Giffen*, 473 F.3d at 43. We have so far declined to require any district court to provide a jury instruction based on this doctrine due to our worry that it might "swallow the actual public authority and entrapment-by-estoppel defenses." *Id.* Assuming we were to recognize negation of intent, whether a jury instruction on it would be appropriate would "depend on the precise elements of a crime," specifically the "nature of the intent element." *Id.* at 45. In other words, we would only apply it to those crimes where proof that a defendant knew they were violating the law is required to establish the mens rea.

Generally knowledge of the law is assumed, but the Supreme Court has recognized some crimes based on violations of technical requirements in which it must be affirmatively shown by the prosecution to establish mens rea. *See*, *e.g. Liparota v. U.S.*, 471 U.S. 419 (1985) (finding a law that prohibited misappropriation of food stamps "knowingly…in any manner not authorized by [the statute] or the regulations" required defendant to know the use violated the regulations); *Cheek v. U.S.*, 498 U.S. 192 (1991) (prosecution for "willful" violations of tax laws requires proving intent to violate those highly technical laws, not just inadvertent or mistaken mis-filings); *Ratzlaf v. U.S.*, 510 U.S. 135 (1994) (prosecution for a "willful" violation of complex bank regulation requires proving intent to structure transactions intending to violate those laws); *Bryan v. U.S.*, 524 U.S. 184 (1998) (prosecution for a "willful" violation of gun seller licensing requirements requires proving intent to avoid the statutory requirements). Only in such a circumstance would providing evidence that defendants believed that they had been told by a government official that their actions did not amount to a violation of the law be probative of

---

[1] Other opinions Georgescu cites quote one or more of the formulation of these three. *U.S. v. Mergen*, 764 F.3d 199, 205 (2d Cir. 2014) (quoting *Giffen*); *U.S. v. Williams*, 526 F. App'x 29, 32 (2d Cir. 2013) (summary order) (quoting *Gil* and *Abcasis*).

mens rea. Where knowledge of legality is not an element of the offense, mens rea only relates to the behavior itself (and not to whether that behavior was illegal). In that circumstance, defendants' claim that they were authorized to act as they did can only be asserted as a defense.

The offenses of which Georgescu was convicted below do not include intent to violate the law as part of their mens rea; they require only intent to carry out the goals of the conspiracy. Indeed, Georgescu knew what he and his co-conspirators were doing was illegal. That is why he originally offered to act as an informant. Whether he believed he was nevertheless authorized to do so is probative of whether he was entitled to a *defense* to having done so, not whether he had the requisite mens rea to be found guilty of conspiracy. *See Aparicio v. Artuz*, 269 F.3d 78, 98 (2d Cir. 2001) ("Affirmative defenses…negate criminal liability for an offense, notwithstanding that the State has otherwise proven all the elements of that offense beyond a reasonable doubt."). He was allowed to present such a defense—entrapment by estoppel.

We have considered the remainder of Georgescu's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk