UNITED STATES of America,
Appellee,

v.

Alonzo T. GREGORY, Defendant–
Appellant.

No. 97–1687.

United States Court of Appeals,
Second Circuit.

Argued Oct. 10, 2000.

Decided April 2, 2001.

Jeremiah Donovan, Old Saybrook, CT, for Defendant–Appellant.

Michael R. Sklaire, Assistant United States Attorney, New Haven, CT (Stephen C. Robinson, United States Attorney, and Peter S. Jongbloed, Assistant United States Attorney, on the brief), for Appellee.

Before NEWMAN and KEARSE, Circuit Judges, and CHIN, District Judge.*

CHIN, District Judge:

In this case, defendant-appellant Alonzo T. Gregory appeals from a judgment of conviction entered in the United States District Court for the District of Connecticut sentencing him principally to a term of imprisonment of 262 months. Gregory pled guilty pursuant to a written plea

agreement and an oral agreement to cooperate with the Government, and he signed a written cooperation agreement shortly thereafter. Before he could begin his cooperation, however, he was arrested for committing new crimes. The Government declared the cooperation agreement null and void. Gregory moved for leave to withdraw his plea, but the motion was denied.

■ On appeal, Gregory argues that the Government's revocation of the cooperation agreement was improper because the new charges ultimately were dismissed. In addition, he argues that even if the revocation of the cooperation agreement was proper, he was entitled, under basic contract principles, to withdraw his guilty plea so that he would be restored to the position he was in prior to entering into the cooperation agreement. For the reasons that follow, the arguments are rejected and the judgment is affirmed.[1]

## BACKGROUND

On June 11, 1996, Gregory was indicted on one count of possession with the intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). The Government alleged that on March 26, 1996, Gregory sold approximately 11.3 grams of crack cocaine to an undercover police officer for $400.

---

* Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.

1. Gregory has raised several other issues on appeal, including whether he entered his plea knowingly and voluntarily, whether his plea allocution was conducted in compliance with Fed.R.Crim.P. 11, and whether certain guns and drugs were properly attributed to him for purposes of determining "relevant conduct" for sentencing. We have considered all of Gregory's additional arguments and have found them to be without merit, except that

we decline to consider the issue of whether Gregory's sentencing counsel provided effective assistance of counsel. This issue, which raises numerous factual questions, is raised for the first time on appeal, and it is more appropriately raised by way of a motion by Gregory pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. *See United States v. Williams,* 205 F.3d 23, 35–36 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 203, 148 L.Ed.2d 142 (2000); *United States v. Workman,* 80 F.3d 688, 701 (2d Cir.1996).

Trial was scheduled to commence on December 3, 1996. As jury selection was about to begin that day, Gregory agreed to plead guilty to the one-count indictment and to enter into a cooperation agreement with the Government. Because of the nature of his proposed cooperation, Gregory, his lawyer, and the Government met with the District Judge in proceedings closed to the public. The Government reported to the Court that Gregory had agreed to plead guilty and to cooperate, that the parties had prepared a written plea agreement that made no reference to a cooperation agreement, and that the parties intended to enter into a written cooperation agreement later.

The District Court summarized the terms of the anticipated cooperation agreement on the record and confirmed with Gregory that he understood them. The Court specifically advised Gregory that if the Court did not reduce his sentence, he would not be permitted to withdraw his guilty plea. After this discussion, the following colloquy occurred:

THE COURT: ... I don't know whether you intended to file something and have it under seal? It was a little unclear to me how you wanted to proceed, gentlemen.

[THE ASSISTANT U.S. ATTORNEY]: Your Honor, if I may, just one other thing: Mr. Gregory has to know that if at anytime during his cooperation, he fails to abide by that agreement, independent from the agreement he's making here, that could give rise to the government saying the deal is off,—

THE COURT: The whole deal is off.

[THE ASSISTANT U.S. ATTORNEY]: The whole deal is off, and he has to understand at that point *he couldn't withdraw his plea as well.*

(Emphasis added). The closed proceedings concluded with the following exchange:

THE COURT: ... If you violate in any way the conditions under which you are released, sir, or you violate the conditions that are set forth in the plea agreement, which would be forthcoming this afternoon, your opportunity to be at liberty would be terminated and you will be sent back into custody. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. It's very important that you—

THE DEFENDANT: I understand. Trust me, I understand.

THE COURT: I'm sure you do but just be aware of the fact that your liberty would be terminated, you would be confined, and we would proceed with sentencing at the appropriate time. *You wouldn't be able to take your guilty plea back.* Do you know that?

THE DEFENDANT: Um hum. *Yes.*

(Emphases added).

The proceedings were then immediately moved to open court for the taking of the plea. Gregory signed a written plea agreement in which he agreed to plead guilty to the one-count indictment and to admit that he possessed and distributed five or more grams of cocaine base. Gregory acknowledged in the written plea agreement:

that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement.

Gregory allocuted to the charge, admitting that on March 26, 1996, he possessed and actually distributed five or more grams of cocaine base. The District Court accepted

the plea. With the consent of the Government, the District Court released Gregory on bail pending sentencing.

On December 5, 1996, Gregory's agreement to cooperate with the Government was reduced to writing and signed by the parties. The written cooperation agreement stated that it supplemented the December 3, 1996, plea agreement and provided that the two agreements "constitute the entire plea agreement." The written cooperation agreement further provided:

> If the Government determines that the defendant ... has committed or attempted to commit any further crimes ... [,] or otherwise has violated any provision of this agreement, then the Government may deem this agreement null and void.

The written cooperation agreement was silent as to whether Gregory would be permitted to withdraw his guilty plea if the Government determined he had breached his obligations.

On December 13, 1996, just a week later and before he could begin his cooperation, Gregory was arrested by the Hartford Police Department and charged with assault in the third degree and criminal mischief. On January 16, 1997, the Government advised Gregory's counsel that it was going to seek to revoke Gregory's bail and that:

> [W]e wish to apprise you that your client has violated the terms of his cooperation agreement with the Government dated December 5, 1996.... Based upon his conduct and his failure to notify the Government of it, the Government does, in fact, deem the agreement null and void. We also wish to inform you that, at this time, the Government has no further interest [in] your client's cooperation or assistance. As you already know, to date, your client ... has not provided substantial assistance. Accordingly, we intend to proceed to sentencing without filing a motion permitting the Court to depart downwardly pursuant to U.S.S.G. § 5K1.1.

The Government's actions were based on an arrest warrant, the warrant application, and related reports, which indicated that Gregory had assaulted his girlfriend. Gregory's bail was revoked and he was placed into custody.

Gregory thereafter moved to have his court-appointed attorney replaced. The motion was granted, and new counsel was appointed. With the assistance of new counsel, Gregory moved for leave to withdraw his guilty plea. In a written decision issued September 25, 1997, the District Court (Burns, *Senior District Judge* ) denied the motion.

The District Court also issued an addendum, filed under seal, addressing the Government's revocation of the cooperation agreement. The District Court expressed the view that Gregory's motion to withdraw his guilty plea was motivated more by the prospect that he would face sentencing without the benefit of a 5K1.1 motion by the Government than by any belief that he was rushed into pleading guilty. The District Court did not explicitly discuss the issues of whether the Government's revocation of the cooperation agreement was justified or whether Gregory was entitled, under general contract principles, to be restored to the position he occupied before he entered into the agreement. The District Court, however, implicitly ruled that the Government's revocation decision was justified, as the Court characterized Gregory's actions that led to his arrest as "violations of the cooperation agreement." Moreover, because the District Court refused to permit Gregory to withdraw his plea, the Court did not restore Gregory to the position he occupied

prior to entering into the cooperation agreement.[2]

On November 13, 1997, Gregory was sentenced principally to a term of imprisonment of 262 months. Following the sentencing, the state court charges that were the basis of Gregory's December 13, 1996, arrest were dismissed.

This appeal followed.

## DISCUSSION

■ On appeal, the District Court's denial of Gregory's motion for leave to withdraw his guilty plea is reviewed for abuse of discretion; its findings of fact are reviewed for clear error; and whether it applied the correct legal principles is a matter of law to be reviewed de novo. *See United States v. Goodman,* 165 F.3d 169, 173 (2d Cir.), *cert. denied,* 528 U.S. 874, 120 S.Ct. 318, 145 L.Ed.2d 150 (1999) (citing *United States v. Williams,* 23 F.3d 629, 635 (2d Cir.1994)); *United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990).

### A. The Revocation of the Cooperation Agreement

■ Gregory argues that the Government's revocation of the cooperation agreement was "unjustified" because it was based on "an arrest that did not ultimately result in a conviction." The argument is rejected because the Government's decision to revoke the cooperation agreement was reasonable.

Gregory was arrested for assaulting his girlfriend just one week after he signed the cooperation agreement. Hence, almost immediately upon being released, he engaged in conduct that led to his arrest. Both his plea agreement and his cooperation agreement prohibited him from committing or attempting to commit a crime, and thus the Government certainly had reason to believe that Gregory breached his agreements even before he could begin cooperating.

The fact that the charges ultimately were dismissed—after the imposition of a 262 month sentence—is of no moment. The Government based its decision on the undisputed fact that Gregory was arrested as well as on information provided in the arrest warrant, warrant application, and related reports. The charges filed against Gregory provided a good faith basis for the Government to determine that he had breached his obligation not to commit any further crimes. *See Rexach,* 896 F.2d at 713 ("where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied"). The Government's determination that Gregory had committed a crime and thus breached the cooperation agreement was not "premised on bad faith, invidiousness, ... dishonesty, [or] unconstitutional considerations." *United States v. Pollack,* 91 F.3d 331, 335 (2d Cir.1996) (citations omitted). The Government was thus justified in voiding Gregory's cooperation agreement.

### B. Contract Principles

■ Gregory next argues that, even assuming the Government was justified in revoking the cooperation agreement, he is entitled, under basic principles of contract law, to be restored to the position he was in before the parties entered into the cooperation agreement. In other words, he

**2.** Shortly thereafter, Gregory's new counsel moved for leave to withdraw as Gregory's attorney, but the motion was denied by then-Chief Judge Dorsey.

argues that once the Government revoked the cooperation agreement, he should have been permitted to withdraw his guilty plea.

 "Cooperation agreements, like plea bargains, are interpreted according to principles of contract law." *Rexach,* 896 F.2d at 713; *see also United States v. Hon,* 17 F.3d 21, 26 (2d Cir.1994). To determine whether a cooperation agreement has been breached, a court must look to the parties' reasonable understanding of the terms of the agreement. *See United States v. Colon,* 220 F.3d 48, 51 (2d Cir. 2000) (holding that "[t]he court looks to the reasonable understanding of the parties as to the terms of the agreement in determining whether a plea agreement has been breached"). All ambiguities in the agreement must be resolved in favor of the defendant. *See id.* (plea agreements); *see also United States v. Aluzzo,* 943 F.Supp. 243, 245 (E.D.N.Y.1996) (cooperation agreements).

Here, Gregory correctly points out that the written cooperation agreement was silent as to whether Gregory would be permitted to withdraw his guilty plea if the Government determined he had breached his obligations. The written cooperation agreement, however, was only one part of the "contract" between the Government and Gregory. The language of the two written agreements and the understandings set forth on the record show unmistakably that the parties' "reasonable understanding" was that Gregory would not be permitted to withdraw his guilty plea if he failed to comply with his obligations and the Government chose not to permit him to cooperate.

During the guilty plea proceedings, Gregory was advised on the record no less than three times that he could not withdraw his guilty plea if he violated his obligations, the Government chose not to write a 5K1.1 letter, or his sentence was not reduced. In one exchange, he was specifically told that "if at anytime during his cooperation, he fails to abide by that agreement, . . . [t]he whole deal is off . . . [and] at that point he couldn't withdraw his plea as well."

The language contained in the written agreements also supports the conclusion that the Government had the ability to terminate the cooperation agreement without releasing Gregory from his guilty plea. The written plea agreement provided that the Government could "void all or part of this agreement" if Gregory engaged in any criminal activity before sentencing. The cooperation agreement provided that "the Government may deem this agreement null and void" if Gregory committed a crime, but it contained no language giving Gregory the option to declare the agreement void nor language to the effect that the plea agreement would be voided as well if the cooperation agreement were voided. Gregory's interpretation of the agreement is not reasonable. The parties entered into the plea and cooperation agreements in part to avoid trial, as jury selection was about to begin and the Government was presumably prepared to present its evidence. The parties clearly did not intend to give the defendant the ability to unilaterally rescind the agreement by engaging in criminal conduct, with the Government's only recourse to start all over again, including preparing for trial anew.

 Even where a defendant's breach of a plea agreement results in the loss of a benefit promised by the Government in the plea agreement itself, withdrawal of the guilty plea is not permitted unless that remedy is part of the reasonable meaning of the plea agreement. In *United States v. Rivera,* 954 F.2d 122 (2d Cir.), *cert. denied,* 503 U.S. 996, 112 S.Ct. 1701, 118 L.Ed.2d 410 (1992), the defendant argued

that he should have been allowed to withdraw his guilty plea. The Government had agreed, in the plea agreement, to recommend a two-level reduction of the offense level for acceptance of responsibility, but it declined to do so at sentencing because it had determined that the defendant had not fully accepted responsibility. This Court held that the "reasonable meaning" of the parties' agreement was that the defendant's breach of his obligations:

> would not release [the defendant] from his plea of guilty but would release the government from its obligations to recommend a sentence reduction.

*Id.* at 124. Likewise, here, the "reasonable meaning" of the parties' overall agreement was that if Gregory committed new crimes, he would be bound to his guilty plea even if the Government exercised its right to rescind the cooperation agreement.[3]

Gregory cites a number of Connecticut cases for the proposition that upon rescission of a contract, the parties are to be restored to their former condition as nearly as possible. *See, e.g., Kavarco v. T.J.E., Inc.,* 2 Conn.App. 294, 478 A.2d 257, 261 (1984) ("Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract . . . and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract."); *see also Duksa v. Middletown,* 192 Conn. 191, 472 A.2d 1, 4 (1984).

This reliance is misplaced. First, the Government did not terminate the entire agreement between the parties; it terminated the cooperation agreement only, and the plea agreement remained in place. For the reasons discussed above, this was the clear understanding of the parties. Second, as even the authorities relied on by Gregory make clear, rescission is intended to be a remedy for the injured party, *i.e.,* the defrauded party or the party injured by a breach of a contract. *See, e.g., Kavarco,* 478 A.2d at 261. Here, Gregory was not the injured party; instead, he breached the agreement by failing to meet his obligation to refrain from committing new criminal conduct. If he were permitted to withdraw his guilty plea now, he would be benefitting from his own wrongdoing at the Government's expense.

## CONCLUSION

The District Court did not abuse its discretion in refusing to permit Gregory to withdraw his guilty plea. Accordingly, the judgment of conviction is affirmed.

---

**3.** Commenting on "the importance of drafting plea agreements with care," the Court in *Rivera* noted that "[t]he government should make it absolutely clear in a plea agreement that a breach by the defendant releases the government from its obligation to recommend leniency but does not release the defendant from the plea of guilty." 954 F.2d at 125. The facts of this case suggest that the Government did not take note of this admonition, but at oral argument the Government advised that steps were being taken to revise the standard cooperation agreement used in the District.