

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

               Appellant,

v.

SEMAJ HARRIS,

               Respondent.

**WD84640**

**OPINION FILED:**
**December 13, 2022**

### Appeal from the Circuit Court of Cole County, Missouri
The Honorable Jon Edward Beetem, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Anthony Rex Gabbert, Judge, and W. Douglas Thomson, Judge

The State of Missouri ("the State") appeals the dismissal of charges against Harris with prejudice in the Circuit Court of Cole County, Missouri ("trial court").  The State presents two points on appeal.  First, it argues that the trial court exceeded its authority when it turned a dismissal without prejudice into a dismissal with prejudice.  Second, it argues that a prior plea did not foreclose prosecution for armed criminal action.  The judgment is affirmed in part and reversed in part, and the case is remanded.

1

## Facts

On April 18, 2019, Semaj Harris ("Harris") was charged with felony murder in the second degree and first-degree robbery of a handgun. The charges pertained to the robbery of M.S. and the subsequent shooting death of N.N. on or about November 19, 2018. Harris was arraigned, discovery was had, and plea negotiations took place.

On May 10, 2019, Harris entered into a deferred prosecution agreement ("DPA") with the State. The agreement provides in pertinent part as follows:

I, Semaj Harris, do swear and affirm the following:

1. The State of Missouri has charged me with the felonies of Felony Murder and Robbery 1st. My trial date is on May 13, 2019.

2. I, Semaj Harris, hereby agree and admit under penalty of perjury, that on or about 11-19-2018, I acting knowingly in concert with others, participated in criminal conduct to steal marijuana and in the course thereof a murder resulted.

3. I, Semaj Harris, further understand that the Cole County Prosecuting Attorney is willing to defer prosecution against me for a period of five years on all charges enumerated above provided that I comply with each and every provision of this agreement.

4. I enter into this agreement voluntarily and knowingly, I understand each of the terms enumerated below for this agreement, and I have had the assistance of counsel in understanding and complying into the future for the successful conclusion of this agreement.

### TERMS OF THE AGREEMENT

A. I, Semaj Harris, will assist as a willing participant in the prosecution of Berry Jones and Bruce Thomas, including, but not limited to, answering summons and subpoenas, and testifying fully and truthfully when requested; I will not assert my right against self-incrimination for any potential criminal

2

acts which implicate criminal behavior of the co-defendants or myself. I will not and have not lied during a proffer or any other testimony.

B. I, Semaj Harris, will plead guilty to 570.030 RSMo, the felony of accessory stealing of a controlled substance (class D felony), for which the State will recommend five years in the department of corrections. The counts of mentioned above in 3. (sic) would be deferred with no plea, and will be dismissed (with prejudice) at the conclusion of this agreement in five years if I comply with all the terms of this agreement. . . .

Upon entry of the agreement, Harris pled guilty to stealing marijuana and was sentenced to five years in the Department of Corrections pursuant to the agreement. The remaining charges were dismissed without prejudice. Harris was paroled once he reached his conditional release date on the five-year sentence.

On December 17, 2019, the State filed a joint indictment against Harris and Barry Jones for the events on or about November 19, 2018, which gave rise to the plea agreement. The indictment alleged the following counts against Harris[1]: Count V – felony murder in the second degree; Count VI – robbery in the first degree of marijuana and a handgun; Count VII – delivery of a controlled substance; Count VIII – armed criminal action based on robbery in first degree and distribution of a controlled substance; Count IX – unlawful possession of a firearm; and Count X – tampering with physical evidence. On February 7, 2020, Harris filed a motion to dismiss the indictment. He alleged that the State violated the DPA by bringing the charges. Harris further argued that the charges violated his right to be free from double jeopardy because the stealing charge of which he had been convicted

---

[1] Counts I – IV allege charges against Jones and not Harris.

3

and for which he had served time was a lesser-included offense of the robbery charge with respect to stealing marijuana.

At the hearing on Harris's motion, the State argued that Harris had failed to comply with the terms of the DPA. The State alleged that Harris lied under oath in a September 26, 2019 deposition regarding the events of November 19, 2018. The State relied on reports, depositions, and the testimony of a law enforcement detective in an attempt to establish the alleged violation of the DPA.

On May 25, 2021, the trial court granted Harris's motion to dismiss the charges of felony murder, first-degree robbery, and armed criminal action. The court found "the offered proof insufficient to establish that it is more likely than not that Harris's statements that he did not enter the premises and that he had a gun were false; and that he violated the terms of the DPA by making such false statements."[2] The court further found that even if Harris had breached the DPA, "basic principles of contract law prevent the State from claiming a breach and avoiding performance under the contract" because the "State received a plea of guilty from Harris and he served prison time on that plea. Harris bargained that such a sentence would be the sole consequence of his conduct on [November 19, 2018]." The court noted that the probable cause statement filed with the original complaint in Harris's case makes "clear that at least one witness said Harris had a gun and entered the premises on [November 19, 2018]. Yet, despite having the knowledge of those

---

[2] The above language from the trial court is correctly quoted, however, the testimony that the prosecutor argued was false was Harris's testimony that he did *not* have a gun. The trial court simply mischaracterized that testimony.

4

contradictions, the State entered into the DPA with Harris. Surely the State did not intend for Harris to change his story in exchange for the [DPA]." It found the State's claim of fraud in the inducement to fail for the same reason. Finally, the court found that the charge of robbery with respect to marijuana was barred by double jeopardy because Harris already pled guilty to stealing marijuana, a lesser included offense of robbery. The court ruled:

> 1. Count V - Felony Murder of the Joint Supersedeas Indictment is dismissed without prejudice as to the stealing a handgun due to the DPA but is dismissed with prejudice as to the stealing marijuana as that claim is barred by double jeopardy.
>
> 2. Count VI - Robbery 1st of the Joint Supersedeas Indictment is dismissed without prejudice as to the stealing of a handgun due to the DPA, but is dismissed with prejudice as to the stealing of marijuana as that claim is barred by double jeopardy.
>
> 3. Count VII - Delivery of a Controlled Substance remains viable against Defendant Semaj Harris.
>
> 4. Count VIII - Armed Criminal Action of the Joint Supersedeas Indictment is dismissed as it is charged in the conjunctive linking Robbery 1st and Distribution of a Controlled Substance, however only the ACA based upon Robbery 1st is dismissed with prejudice. The State could proceed by amending its charge only to ACA based on Distribution of a Controlled Substance.
>
> 5. Counts IX and X of the Joint Supersedeas Indictment remain viable against Defendant Semaj Harris and the charges set forth in those counts against Defendant Semaj Harris remain set for trial.

The judgment included this footnote:

> Dismissals without prejudice due to the terms of the DPA assume that there is insufficient proof of a breach. Theoretically, if the State could adduce sufficient credible evidence to convince the Court of a breach by Harris, it could then proceed on the allegations in the supersedeas indictment which

5

are found to be barred by the DPA in this order. That would likely require a full trial on these charges, same being a violation of the DPA.

On May 27, 2021, the State requested a new hearing on the order alleging that Harris had committed new offenses and that it could prove multiple violations of the DPA. A hearing was scheduled for June 24, 2021 but before the hearing was held a new indictment was filed by the State. On June 16, 2021, the State filed a new indictment against Harris and Jones for the events on or about November 19, 2018, which gave rise to the DPA. The indictment alleged the following counts against Harris[3]: Count V – felony murder in the second degree; Count VI – accessory robbery in first degree of a handgun; Count VII – accessory delivery of a controlled substance; Count VIII – armed criminal action based on robbery in first degree and distribution of a controlled substance; Count IX – unlawful possession of a firearm; Count X – accessory tampering with physical evidence; and Count XI – unlawful use of a weapon. Harris filed a motion asking the court to dismiss Counts V, VI, and VIII. Harris argued that he did not breach the DPA and that the charged crimes were barred by the DPA. At the hearing on the motion, the State presented evidence that Harris had a habit of carrying a firearm and that he had violated the conditions of his parole in violation of the DPA.

The trial court considered the additional evidence offered by the State but found "that this evidence is insufficient to support a finding that it is more likely than not Harris lied when he said he did not have a gun on the night in question." Further, the alleged

---

[3] Counts I – IV allege charges against Jones and not Harris.

evidence of breach "was known to the State when they entered into the DPA with Harris. And yet they did." The judgment stated that "the credible evidence adduced does not convince the Court that Harris violated the agreement. Likely yes, more likely than not, no." With respect to the allegation that Harris engaged in conduct that violated the terms of his parole, the court noted that Harris's "parole was revoked for this subsequent conduct, and he is now back in the Department of Corrections, serving the remaining time on the sentence he accepted when he entered into the DPA." It further found that violation of parole conditions would not violate the terms of the DPA.

Harris raised the issue of the implied covenant of good faith and fair dealing because the State had the evidence it was relying on in its possession when the DPA was executed. The court found that "[b]ecause Harris continues to assert the same story that he has always told, the State wishes to punish him by revoking the [DPA] and restoring the murder charges against him." It stated:

> Harris cannot declare the agreement void due to the State's conduct and be restored to his original position. While Harris may not have fully performed his obligations under the contract, he has at least substantially performed by pleading guilty and accepting the prison time. The contract may not be rescinded. Harris v. Desisto, 932 S.W.2d 435 (Mo. App. 1996).
> The State made a bad deal. For the reasons set forth above and particularly because the State sought and received prison time from Harris, the State is stuck with the agreement.

The trial court ruled:

> 1. Count V of the Joint Supersedeas Indictment filed June 16, 2021, charging Felony Murder as a result of the felony of stealing a handgun is dismissed with prejudice.

7

2. Count VI of the Joint Supersedeas Indictment filed June 16, 2021, charging Robbery 1st due to stealing of a handgun is dismissed with prejudice.

3. Count VIII of the Joint Supersedeas Indictment filed June 16, 2021, charging Armed Criminal Action based upon Robbery 1st is dismissed with prejudice. The State will be allowed to proceed on the Armed Criminal Action charge based upon Distribution of a Controlled Substance as set forth in this most recent indictment. Count IX will be amended by interlineation, immediately after the words, "State of Missouri", to read as follows:

> the defendant committed the felony of Distribution of a Controlled Substance and the defendant committed the foregoing felony by, with and through the knowing use, assistance and aid of a handgun, a deadly weapon.

Defendant is so advised.[4]

4. The State may proceed on Count VII - Accessory Delivery of a Controlled Substance, Count VIII Armed Criminal Action relative to Count VII - Accessory Delivery of a Controlled Substance, Count IX - Unlawful Possession of a Firearm and Count X - Accessory Tampering with Physical Evidence.

The judgment included this footnote:

> This hearing constitutes a second "bite of the apple" and failing to prevail, merits a dismissal with prejudice. It also makes the resolution of these claims final for the purposes of review.

---

[4] Harris argues on appeal that the dismissal of Count VIII is not a final judgment. He states that the trial court only dismissed Count VIII for armed criminal action to the extent it was based on robbery in the first degree. It permitted Count VIII to go forward to the extent it was premised on distribution of a controlled substance. Thus, he claims the dismissal of Count VIII for armed criminal action premised on robbery in the first degree is not final.

The court explicitly dismissed the charge of armed criminal action premised on robbery in the first degree with prejudice. "A dismissal with prejudice is a final order." *State v. Triplett*, 355 S.W.3d 543, 548 (Mo. App. W.D. 2011). "In criminal cases, a judgment is final when the trial court enters an order of dismissal or discharge of the defendant prior to trial which has the effect of foreclosing any further prosecution of the defendant on a particular charge." *Id*. (internal quotation marks omitted). That is the effect of the judgment in this case. Pursuant to the court's judgment, the charge of the crime of committing armed criminal action in the course of the perpetration of the crime of first-degree robbery can never be prosecuted. We find that the judgment as to this count is final.

This appeal follows.[5]

## Standard of Review

> "This Court has not addressed the standard of review of a judgment sustaining a motion to dismiss a criminal indictment[.]" *State v. Merritt*, 467 S.W.3d 808, 810 (Mo. banc 2015). In *Merritt*, this Court applied civil case law precedent to hold, if the dismissal is justified on any ground alleged in the motion, this Court will affirm the judgment. *Id.* at 810-11.

*State v. R.J.G.*, 632 S.W.3d 359, 364 (Mo. banc 2021). A plea agreement is a contract between the State and a defendant, and, as such the intent of the parties is ascertained by looking at the words in the contract, giving those words their plain and ordinary meaning unless the contract is ambiguous. *Evans v. State*, 28 S.W.3d 434, 439 (Mo. App. S.D. 2000); *Cornelius v. State*, ___ S.W.3d ___ No. S.D. 36988, 2022 WL 3585069 *5-6. All ambiguities in a plea agreement must be resolved in favor of the defendant. *See, e.g., U.S. v. Gregory*, 245 F.3d 160, 165 (2d Cir. 2001).

## Point I

In its first point on appeal, the State argues the trial court erred in dismissing Counts V, VI, and VIII of the superseding indictment against Harris with prejudice. It states that the trial court did not have authority to turn a dismissal without prejudice into a dismissal with prejudice. The State further claims that the parties did not agree to a dismissal with

---

[5] As of the time of the writing of this opinion, Count VII (accessory delivery of a controlled substance); Count VIII (armed criminal action based on distribution of a controlled substance); Count IX (unlawful possession of a firearm); Count X (accessory tampering with physical evidence); and Count XI (unlawful use of a weapon) are still pending. Trial is currently set for January 2023. This opinion does not address the charges still pending against Harris as they are not before this court.

9

prejudice prior to the completion of the DPA. Given our disposition of Point II, we only discuss Counts V and VI in this point.

The trial court appears to have dismissed the charges against Harris with prejudice as a sanction against the State for repeatedly filing charges against Harris when it had not shown that Harris had breached the DPA. The vast majority of cases in which a trial court orders sanctions involve discovery violations, which are controlled by Supreme Court Rule (Rule 61 in civil cases and Rule 25 in criminal cases). However, courts also have an *inherent* power to sanction, outside of the Rules. *See, e.g., Hale v. Cottrell, Inc.*, 456 S.W.3d 481 (Mo. App. W.D. 2014); *State ex rel. Jackson Cty. Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 83 (Mo. App. W.D. 2011). *Prokes* quotes a case from the federal courts with very strong language:

> Preliminarily, we note that it is now clear that a federal court has the inherent power to sanction for conduct which abuses the judicial process. This power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. Moreover, pursuant to this power, a court may impose the severe sanction of dismissal with prejudice (or its equivalent, judgment) if the circumstances so warrant.

*Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993). *Prokes* follows this quote by stating, "Trial courts must be allowed discretion to control their own dockets or other cases and parties suffer by not being allowed their timely day in court." *Prokes*, 363 S.W.3d at 83. *Hale* uses similar language referring to the court's inherent power to sanction, holding that sanctions are appropriate in "situations where it is reasonably necessary to preserve the

10

court's existence and protect it in orderly administration of its business." *Hale*, 456 S.W.3d at 488 (quoting *Rea v. Moore*, 74 S.W.3d 795, 800 (Mo. App. S.D. 2002)).

In this case, the State chose almost immediately to refile the charges after the trial court, following a hearing, found that the State had failed to establish that Harris had violated the DPA. And at the subsequent hearing after the refiling of the charges, the State adduced scant additional evidence of a violation of the DPA, with all of the evidence presented by the State at the second hearing having been available to the State prior to the first hearing. The State's act of repeated re-filing of criminal charges against Harris when he had not breached the DPA gave the trial court reason to protect its existence, manage its affairs to achieve the orderly and expeditious disposition of cases, and protect its orderly administration of business, all of which are cited as appropriate uses of the court's inherent power to sanction. We are sympathetic to the trial court's frustration and, in fact, absent the DPA, the court's dismissal of the charges against Harris with prejudice may well have been consistent with the above-stated principles and cases.

However, both parties agree and the trial court found that the DPA is a valid contract that binds both parties. Both parties agreed at the appellate oral argument that the DPA is still in effect and that, pursuant to its terms, the DPA runs through May 10, 2024. Harris agreed to assist in the prosecution of Jones and Thomas for a period of five years. He also agreed to plead guilty to stealing with a recommended sentence of five years in the Department of Correction. Those are his obligations under the DPA. He did, in fact plead guilty to stealing and served the prescribed sentence. But when it dismissed the charges

11

with prejudice, the trial court effectively ended the DPA and made it so Harris no longer had to abide by its terms, deleting his obligation to assist in the prosecution of Jones and Thomas. This is erroneous even though it is difficult to imagine how the State could reasonably use Harris's testimony in future prosecutions, having repeatedly filed motions with the court setting forth the State's belief that Harris's testimony regarding the events of November 19, 2018, was false or "impossible" and also comply with the State's obligation not to suborn perjury. The trial court's impermissible interference with the DPA warrants reversal of the dismissals with prejudice in favor of dismissals without prejudice.[6]

Point I is granted.

## Point II

In its second point on appeal, the State argues that the trial court erred in dismissing Count VIII of the superseding indictment. Count VIII was for armed criminal action premised on the commission of first-degree robbery. The State claims that Harris's prior plea to stealing did not foreclose prosecution for armed criminal action. It states that there was no agreement by the parties for the State to forgo a prosecution for armed criminal action based on first degree robbery and that there is no prohibition on an additional prosecution for armed criminal action, even where a prosecution for the underlying offense is prohibited by double jeopardy. While we agree that double jeopardy does not prohibit

---

[6] The principles set forth in *Prokes* and *Hale* would allow the trial court to issue an order prohibiting the State from filing any further charges against Harris arising out of the events occurring on November 19, 2018, unless the State has first obtained an order from the trial court finding that Harris has violated the DPA; and currently, as the trial court has found, Harris's only remaining obligation under the DPA is to testify truthfully.

12

prosecuting Harris for armed criminal action, an offense for which he was not initially charged, double jeopardy principles do color the contract interpretation of the DPA so that it affects what Harris reasonably believed were the terms of his agreement with the State.

We begin our analysis with the principle that plea agreements are like any other contracts, and so we

> ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning. The "intent of the parties. . . is determined based on the contract alone unless the contract is ambiguous.
>
> "[A] contract is only ambiguous, and in need of a court's interpretation, if it terms are susceptible to honest and fair differences." "A contract is not ambiguous merely because the parties disagree on its construction." "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions."

*Cornelius*, __ S.W.3d ___, 2022 WL 3585069 (Aug. 22, 2022), quoting *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007). Whether a contract is ambiguous is a question of law, which we review *de novo*. *Dunn v. Baker*, 533 S.W.3d 831, 835 (Mo. App. E.D. 2017).

It is fairly clear that the trial court read the DPA as being unambiguous. Although the court found that "Mr. Harris likely thought he was negotiating all risk of trial for any charges stemming from the events of November 19, 2018," and, indeed, expressly found in another order that "Harris bargained that such a sentence would be the sole consequence of his conduct on November 1[9], 201[8]," the trial court ultimately concluded that the "clear terms of the agreement only refers [sic] to charges of Felony Murder and Robbery

13

1st."  The trial court apparently found that Harris's understanding was overridden by the unambiguous "release" provisions in the DPA.

We disagree with the trial court's analysis and conclude that the DPA is, at a minimum, ambiguous as to whether the State merely agreed, so long as Harris complied with the agreement, not to prosecute felony murder and first-degree robbery or whether it agreed that Harris would face no other charges arising out of the 2018 criminal episode.  In general, all related crimes should be disposed of together.  *See* Wayne R. LaFave, et al., Criminal Procedure, Section 17.4(c) (4th ed. Nov. 2021 update).  "Either by statute or court rule, or occasionally by judicial decision, a number of jurisdictions now provide that the prosecutor must join (or, that on motion of the defendant, there must be joined) all offenses arising out of the same transaction.  Provisions in the Model Penal Code, ABA Standards[,] and Uniform Rules all so provide."  This policy is grounded in principles of claim preclusion and double jeopardy.  LaFave cites *Ashe v. Swenson*, 397 U.S. 436, 439-40 (1970), wherein a criminal defendant who had been acquitted of having robbed one man in a group of men could not then be tried for having robbed another man in the same group during the same course of events as the prosecution attempted.  This was true even though the state had, subsequent to the first trial, secured stronger identification witnesses against the defendant.  Although *Ashe* clearly implicates double jeopardy, since the jury had already once determined that Ashe had not been proven to be one of the robbers, the

14

common practice and the proper administration of justice is not to prosecute criminal actions of an individual arising from a single course of events in a piecemeal fashion.[7]

Moreover, the State's interpretation of the DPA as unambiguously applying only to felony murder and first-degree robbery could plausibly forever alter the process of plea negotiations in the state of Missouri. Under the State's interpretation, immediately after Harris entered his plea of guilty on the charge of stealing of a controlled substance and was sentenced for that offense pursuant to the DPA, the State would be free to file any and all other charges that may have arisen out of the events of November 19, 2018, even without any allegation that Harris violated the DPA. In fact, the statements Harris made at sentencing in order to make the factual basis for the plea to the charge of stealing could be used against him in prosecuting those new charges. Further, under this interpretation of the agreement, Harris was required to testify truthfully against the other defendants in the prosecution of the charges arising from the events of November 19, 2018, and waive any right he would have had to assert his rights under the Fifth Amendment not to incriminate himself. In fact, the agreement expressly states, "I will not assert my right against self-incrimination **for any potential criminal acts** which implicate criminal behavior of the

---

[7] The dissent cites to the same section of LaFave quoting a case from the Florida Court of Appeals in 1971 calling the "same transaction" rule "absurd" and then citing an unpersuasive example consisting of two major crimes that would almost always be tried together and a municipal traffic violation. We do not find this case persuasive. In any event, we are not holding that all cases from the same transaction *must* be tried together, only that any plea agreement, the vast majority of which are never even reduced to writing particularly in misdemeanor cases, expressly state on the record when it is the State's intention *not* to cover all of the offenses committed as part of the applicable criminal episode that are known to the government at the time of the agreement. Similar to a civil settlement agreement of a pending lawsuit, it is presumed that the settlement covers every part of the dispute between the parties. If less than all issues are being resolved, it is imperative that the agreement clearly set forth all issues that will remain unresolved following the entry of the settlement agreement.

co-defendants **or myself**." (Emphasis added). Under the trial court's interpretation, the State would not be in violation of the DPA to then use Harris's testimony from the depositions or trial of the co-defendants to charge Harris with additional crimes arising from the events of November 19, 2018, with the sole exceptions of felony murder and first-degree robbery. And if Harris, knowing his truthful statements would incriminate him, did not testify truthfully, he would then be in violation of the DPA. Putting a defendant in this type of Catch-22 trap does not fit within the parameters of good faith and fair dealing in any plea agreement. Neither could it be said that such a scenario is within the reasonable expectations of Harris when entering into the DPA.

This interpretation also decimates the consideration Harris received in return for his promises under the DPA; he would have received very little value in return for his plea of guilty and prison sentence and subjected himself to significant additional criminal liability.

Finally, under the DPA, Harris "waive[d] [his] right to challenge the statute of limitations *of the counts enumerated above*," i.e., felony murder and first-degree robbery. The fact that the parties only agreed to *preserve* these two charges and no others also suggests that other charges arising out of the same criminal episode were released pursuant to the terms of the DPA. We conclude that all of these factors render the DPA ambiguous at the very least.

"Once an ambiguity is determined to exist, the parties' intent can be ascertained through the use of extrinsic [or parol] evidence. Resolution of an ambiguity through the use of extrinsic evidence is question of fact." *Cornelius*, 2022 WL 3585069 at *6, *citing*

16

*Central Stone v. Warning*, 412 S.W.3d 908, 912 (Mo. App. E.D. 2013). Although *Cornelius* instructs the courts to obtain extrinsic evidence to determine the parties' intent as to the terms of an ambiguous plea agreement, the trial court held hearings on whether Harris had breached the DPA, and there was argument presented that the newly charged crimes were within the scope of the DPA, so both parties had an opportunity to present such extrinsic evidence and neither did so. Accordingly, we rely on the general interpretive canons to resolve the ambiguities in Harris's favor.

General interpretive canons would construe the DPA against the State as the drafter. Here, LaFave, *supra*, Section 21.2(d) instructs that "both constitutional and supervisory concerns require[] holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements." (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). How to interpret a written plea agreement has not been addressed in Missouri with respect to interpretations of ambiguous plea agreements, but several federal cases are instructive.[8] *See, e.g., U.S. v. Rivera-Rodriguez*, 489 F.3d 48, 57 (1st Cir. 2007) ("Because defendants must ultimately waive fundamental rights as a result of entering into any plea agreement, we hold prosecutors engaging in plea [negotiations] to the most meticulous standards of both promise and performance. This requirement prohibits, therefore, not only explicit repudiation of the government's assurances, but must

---

[8] We have found cases construing ambiguous plea agreements against the government in every federal circuit, and have not found, nor has the State cited, any case refusing to interpret an ambiguous plea agreement against the government.

in the interest of fairness be read to forbid end-runs around them." (internal quotations omitted)); *U.S. v. Gregory*, 245 F.3d 160, 165 (2d Cir. 2001) ("All ambiguities in the agreement must be resolved in favor of the defendant.")); *U.S. v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) ("[I]n view of the government's tremendous bargaining power [courts] will strictly construe the text against [the government] when it has drafted the agreement." (internal quotations omitted)); *U.S. v. Jorden*, 509 F.3d 191, 196 (4th Cir. 2007) ("We thus hold the Government to a greater degree of responsibility than the defendant. . . for imprecisions or ambiguities in the plea agreements.") (internal quotation omitted)); *U.S. v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004) ("In determining the meaning of any disputed terms in an agreement, the court must apply an objective standard and must decide whether the government's actions are consistent with what the defendant reasonably understood when he entered his guilty plea." (internal quotation omitted)).

This is true even if defendant's counsel bears some responsibility for not resolving the ambiguity.

> While private contracting parties would ordinarily be equally chargeable—so far as enforceability and interpretation are concerned—with their respective counsels' derelictions in negotiating commercial contracts, different concerns apply to bargained plea agreements. Unlike the private contract situation, the validity of a bargained guilty plea depends finally upon the voluntariness and intelligence with which the defendant—and not his counsel—enters the bargained plea.

*Harvey*, 791 F.2d at 300-01.

Finally, the principle of *expressio unius* favors Harris's interpretation of the DPA. *Expressio unius*, mostly applied to statutory construction, means that the "inclusion of a

18

particular limitation excludes all other limitations of that type." *State v. Williams*, 24 S.W.3d 101, 117 (Mo. App. W.D. 2000). The principle has also been applied in the interpretation of contracts. *Heartland Presbytery v. Gashland Presbyterian Church*, 364 S.W.3d 575, 586 (Mo. App. W.D. 2012). In this case, the DPA confirms Harris's "undertand[ing] that if I fail to comply with any of the above-stated terms, formal proceedings may be instituted immediately. . . for the case enumerated above" (indicating the felony murder and first-degree robbery charges that were pending). Under the *expressio unius* principle, it appears that reinstitution of the felony murder and first-degree robbery charges were the *only* consequence anticipated for breach of the DPA.

When formulating plea agreements, "the prosecuting attorney and the defendant should act fairly so that the reasonable expectations of both parties are met." *State v. Wright*, 120 S.W.3d 792, 794 (Mo. App. W.D. 2003). "If the plea court, as finder of fact, determines that the parties either expressly (orally or in writing) or reasonably expected for the agreed-upon plea to address all of the relevant conduct, then the defendant should get the benefit of his bargain, and he is entitled to either specific performance of the plea agreement or an opportunity to withdraw his guilty plea." *Id.* The trial court found as a factual matter that "Harris bargained that [his five-year sentence per his plea] would be the sole consequence of his conduct on November 19, 2018." This is a factual finding to which we defer. And because we determined, as a matter of law, that the DPA was ambiguous as to whether the State, under the DPA, agreed not to prosecute Harris for any of his actions

19

on November 19, 2018, absent his breach of the agreement, and canons of statutory interpretation favor Harris's interpretation, it is reasonable.

Harris pled guilty to stealing and served the sentence prescribed by the DPA; therefore, "allowing him to withdraw his guilty plea would neither return him to the position he was in before he entered into the agreement nor provide him with the benefit of his bargain." *Id*. at 795. Where the defendant "contemplated that he would face no additional charges from his. . . arrest," he is entitled to the benefit of that bargain. *Id.* Accordingly, as the trial court found, even though the State had buyer's remorse after it entered into the DPA with Harris, having concluded that Harris received insufficient punishment under the terms of the DPA, all of the evidence the State offered at both of the hearings had been known to the State prior to entering the DPA with Harris, and the State was "stuck with the agreement." Even if the State does establish at some future time that Harris has violated the DPA, the sole charges the State could bring against Harris for the events of November 19, 2018 would be the felony murder and first-degree robbery charges listed in the DPA.

So although we disagree with the trial court that Count VIII of the superseding indictment for armed criminal action was barred by double jeopardy, we find that the State is prohibited from charging Harris with this offense by the terms of the DPA. We acknowledge that other charges remain pending in the trial court, but these are not before us. Although we recognize that our interpretation of the DPA in this opinion may affect the other charges currently pending against Harris, that matter is for the circuit court in the

20

first instance. The dismissal with prejudice of Count VIII is therefore affirmed. Point denied.

## Conclusion

The judgment is affirmed; however, the trial court is ordered to modify the dismissal of Counts V and VI to be without prejudice. The dismissal with prejudice of Count VIII is affirmed.

_____
Gary D. Witt, Judge


Thomson, J. concurs.
Gabbert, J. dissents in separate opinion



**STATE OF MISSOURI,**

           **Appellant,**

**v.**

**SEMAJ HARRIS,**

           **Respondent.**

**WD84640**

**OPINION FILED:**
**December 13, 2022**

## DISSENTING OPINION

I concur with Point I of the majority opinion, and I respectfully dissent from the majority opinion on Point II.

As for Point I, I agree that the trial court's dismissal of the counts against Harris with prejudice effectively relieves Harris from any obligations under the DPA, which, by its terms, binds Harris until May 10, 2024. For this reason, I agree that the trial court exceeded its authority in dismissing the charges with prejudice. I respectfully dissent from the majority opinion with respect to Point II. Instead, I agree with the trial court that the DPA is not ambiguous and bars only the enumerated offenses of murder and robbery.

1

"The cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Brown v. Smith*, 601 S.W.3d 554, 560 (Mo. App. W.D. 2020). "The intent of the parties ... is determined based on the contract alone unless the contract is ambiguous." *Id*. (internal quotation marks omitted). "[A] contract is only ambiguous, and in need of a court's interpretation, if its terms are susceptible to honest and fair differences." *Id*. (internal quotation marks omitted). "If the contract is not ambiguous, this Court is limited to reviewing the four corners of the contract." *Id*. "When considering whether a particular term or phrase is ambiguous the test is whether the disputed language, *in the context of the entire agreement*, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonably average person." *Id*. (internal quotation marks omitted) (emphasis in original).

Multiple parts of the DPA address its scope:

1. The State of Missouri has *charged me with the felonies of Felony Murder and Robbery 1st*
…
3. I, Semaj Harris, further understand that the Cole County Prosecuting Attorney is willing to defer prosecution against me for a period of five years on *all charges enumerated above* provided that I comply with each and every provision of this agreement.
…
B. … The *counts of mentioned above in 3.* (sic) would be deferred with no plea, and will be dismissed (with prejudice) at the conclusion of this agreement in five years if I comply with all the terms of this agreement.
…
D. … I intentionally, willfully and fully waive my right to challenge the statute of limitations of *the counts enumerated above*.
…
G. I understand that if I fail to comply with any of the above-stated terms, formal proceedings may be instituted immediately at the discretion of the

2

> Prosecuting Attorney of Cole County, Missouri, or designated Special Prosecuting Attorney *for the case enumerated above*.

(Emphasis added). The DPA refers multiple times to the enumerated counts of murder and robbery. It never refers to other possible charges that could have been filed arising out of the events of November 19, 2018. Nothing in the DPA suggests that it applies to more than the enumerated charges of murder and robbery.

That the DPA in this case applied only to two enumerated charges does not create a crisis for plea agreements in the State of Missouri. A DPA could easily state that it applies to all possible crimes occurring during a certain timeframe. It could easily state that it applies to all possible charges arising from a series of events.

In *State v. Jones*, 789 S.W.2d 856, 857 (Mo. App. S.D. 1990), the defendant entered into a plea agreement wherein he would plead guilty to assault in the first degree, manufacturing marijuana, felony possession of marijuana, and armed criminal action. In exchange, the State would dismiss two charges of assault in the first degree and a charge of possession of pentobarbital. *Id*. That agreement was presented to the court and approved on December 22, 1986. *Id*. The defendant was subsequently charged with selling marijuana on September 22, 1986. *Id*. The police report regarding that sale was not provided to the prosecuting attorney until the spring of 1987, and the defendant was charged later in 1987. *Id*. The defendant filed a motion to dismiss alleging that the plea agreement was to dispose of all criminal charges that could have been filed against him on

3

the date of the plea agreement. *Id.* To support this argument, the defendant cited this exchange from the plea proceeding:

> THE COURT: And it's my understanding upon him reporting, bond being released, you will also file dismissals. As part of this plea bargain, you will file dismissals on the other three charges.
>
> MR. FISK: Correct, Your Honor.
>
> THE COURT: And doesn't that dispose of all cases that you have against Mr. Jones?
>
> MR. SWETNAM: Yes.
>
> THE COURT: You're not aware of any other holds or any other cases then? All right. Good-by, Mr. Jones. Good Luck.

*Id.* at 857-58. This court found that "[w]hen the transcript of the plea proceeding of December 22, 1986, is considered as a whole, it unambiguously establishes the only plea agreement made was that the state would dismiss three pending counts and the defendant would plead guilty to four pending counts…." *Id.* at 858.

The appellate court noted that other plea agreements have different terms with different limitations. *Id.* For example, it cited a case where the plea agreement stated, "[T]he state agrees not to bring any further charges against this defendant, *with regard to any of the items that were seized* or information that was received as a result of the execution of these two search warrants.'" *Id.* (quoting *State v. Burson,* 698 S.W.2d 557, 560 (Mo. App. E.D. 1985) (emphasis in original)).

The appellate court concluded that "[t]here was no promise or misrepresentation governing the right of the state to file additional charges." *Id.* at 859. "The issue was not

4

misrepresented because it was not represented at all." *Id.* (internal quotation marks omitted). "By its unambiguous terms the plea agreement did not bar the state from filing the instant charge of selling marijuana." *Id.*

In *State v. Banks*, 259 S.W.3d 49, 51 (Mo. App. W.D. 2008), the defendant agreed to a plea bargain on charges from three separate rape and burglary cases. At the 1991 plea hearing, "the prosecutor informed the court that Banks had been a suspect in two other rape cases for which the State had declined to file charges as a result of the plea bargain." *Id.* "The prosecutor explained that some of the State's evidence would not have been admissible at trial due to the misconduct of a police detective, Ashley Hurn, in investigating a series of rape cases in the Westport area during 1990." *Id.* The prosecutor summarized the plea bargain as follows:

> Additionally, the State promises not to file any other cases for which Mr. Banks may have been a suspect in this series of offenses. The State has been provided with only two police files regarding additional cases. So for the record, I will state that as a result of the plea today the State will decline charges in the police file number 90–007936 and 90–035634. Should there be any other cases brought to our attention, again, pursuant to this series of offenses, they will not be filed upon by our office as a result of this plea bargain.

*Id.* The court accepted the plea bargain. *Id.*

In May 2004, the defendant was charged with forcible rape and sodomy based on DNA testing from a 1986 sexual assault. *Id.* The defendant moved to dismiss the charges based on the 1991 plea agreement. *Id.* "He argued that, in exchange for his guilty plea, the State had agreed to waive prosecution of any other crimes he committed prior to the

5

plea." *Id*. "Because the offenses under investigation by Hurn all occurred during 1990, the court concluded that the 1986 rape and sodomy of T.T. was not in the 'series of offenses' waived by the plea agreement." *Id*. at 52. This court affirmed, finding that, "[i]n limiting the State's promise to 'this series of offenses,' the prosecutor was referring to the police department's investigation of several rapes that occurred in the Westport area during 1990." *Id*. "Because the State plainly limited its waiver to those cases where Banks was a known suspect in 1991, it was not barred from charging him with additional crimes for which the police later learned of Banks' involvement." *Id*.

These cases show that a DPA's scope can vary widely. Had the intention in this case been to prevent the filing of all possible charges stemming from the events of November 19, 2018, the contract easily could have stated that.[1] It did not. That this particular DPA's scope was narrow does not have broad negative implications for all plea bargains in this State.

Further, this case is not concerning or unusual because it involves disposing of related crimes in separate cases. "A prosecutor has broad discretion whether to prosecute — a decision seldom subject to judicial review." *State v. Gardner*, 8 S.W.3d 66, 70 (Mo. banc 1999). "A prosecutor does not have to file all possible charges in an initial indictment." *Id*. "A prosecutor may hold some charges in abeyance, for strategic use." *Id*.

---

[1] The DPA at issue in this case was modified by the parties. Two separate paragraphs were struck and initialed by the parties. Moreover, this DPA is atypical because it creates the unusual order of events where the defendant pleads, is sentenced, and then testifies as opposed to testifying, pleading, and being sentenced. This is evidence the terms of the contract were carefully parsed by the parties.

6

*Ashe v. Swenson*, 397 U.S. 436 (1970) involved six poker players who were robbed. The defendant was charged as one of the robbers with respect to one of the six victims. *Id*. at 437. The only issue at trial was whether the defendant was one of the robbers. *Id*. at 439. The jury found him not guilty. *Id*. The defendant was then charged as one of the robbers with respect to a different one of the six victims. *Id*. at 439-40. The Supreme Court held that the subsequent prosecution was barred by collateral estoppel. *Id*. at 445. A final judgment had already determined that the defendant was not one of the robbers and that finding was binding. *Id*. In the current case, issues of double jeopardy and collateral estoppel are not implicated.

In *Ashe*, a minority of the United State Supreme Court indicated they would require "the prosecution … to join at one trial all the charges against a defendant which grow out of a single criminal act, occurrence, episode, or transaction." *Id*. at 453-54. The majority of the court refused to adopt such a test as a matter of constitutional law. *Id*. at 446; Wayne R. LaFave, et al., Criminal Procedure, Section 17.4(c) (4th ed. Nov. 2021 update). Several states have adopted that standard as matter of local law, however. Wayne R. LaFave, et al., Criminal Procedure, Section 17.4(c) (4th ed. Nov. 2021 update).

"Most jurisdictions do not have compulsory joinder provisions." Wayne R. LaFave, et al., Criminal Procedure, Section 16.1(f) (4th ed. Nov. 2021 update). "A substantial minority group of states, however, do impose a mandatory joinder requirement by statute, court rule, or judicial decision." *Id*. "Almost all of these jurisdictions require joinder of offenses arising out of the same 'transaction' or 'criminal episode.'" *Id*. The idea of

requiring all crimes arising from the same series of events to be charged at the same time has been criticized.

> The absurdity of the "same transaction" standard can be easily illustrated. Assume that one breaks and enters a building to commit larceny of an automobile, does thereafter in fact steal the automobile and drive away, killing the night watchman in the process, and two blocks away runs a red light which brings about his arrest by the municipal police. Could it be said with any logic that a plea of guilty to breaking and entering would bar a subsequent prosecution for murder? If so, presumably a plea of guilty to the traffic offense would likewise, since all arise out of the "same transaction."

Wayne R. LaFave, et al., Criminal Procedure, Section 17.4(c) (4th ed. Nov. 2021 update) (quoting *State v. Conrad*, 243 So.2d 174 (Fla. App. 1971)).

Missouri is in the majority of jurisdictions that does not have a compulsory joinder provision. Rule 23.05 states:

> All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan *may* be charged in the same indictment or information in separate counts.

(Emphasis added); *see also State v. McCrary*, 621 S.W.2d 266, 271 (Mo. banc 1981) (discussing a prior version of the rule and stating that the rule "permitted, *but did not require*, the joinder of offenses … in the same indictment or information when the offenses charged were based: (1) on the same act ; (2) on the same transaction; or (3) on a common scheme or plan") (emphasis added). The prosecutor in the current case was permitted to bring charges related to the events of November 19, 2018 in different cases at different times.

8

Finally, I find it telling that all parties agreed that the DPA only applied to the enumerated charges of murder and robbery until the case was appealed to this court. Harris was initially charged in April 2019 with first degree robbery of a handgun. He entered into the DPA and pled guilty to stealing marijuana. He was charged in December 2019 with felony murder and robbery with respect to a handgun and marijuana. Harris was also charged with delivery of a controlled substance, unlawful possession of a firearm, and tampering with physical evidence. All of those charges stemmed from alleged behavior on or about November 19, 2018.

In its motion to dismiss the December 2019 indictment, Harris asked the court to dismiss the indictment. Harris he stated that, pursuant to the DPA, "the state agreed to voluntarily dismiss and defer the felony murder and robbery charges and recommend a five-year sentence on the felony stealing charge." He asserted that the new indictment was "clearly a breach of the state's obligations pursuant to the DPA." Harris also argued that the indictment violated double jeopardy because he pled guilty to stealing which was a lesser included offense of the new charge of robbery. When arguing its motion to dismiss, counsel for Harris stated:

> Effectively, Your Honor, *Mr. Harris participated in a deferred prosecution agreement that specifies charges of felony murder and robbery first will be dismissed.* It is our position he upheld his end of the bargain and now he stands indicted once again for those same charges and that that joint supersedeas indictment that was filed December 17, 2019, charges him again with the crimes that were a result in May of 2019. That is the substance of the motion. That is why we're here today. It is incumbent upon the State to abide by such agreement, as my client has, and dismiss those counts.

9

As to the remaining accounts in the current indictment, Judge, Count VII through X, those apply also to Mr. Harris, those arise out of the same facts and circumstances that the initial charges resulted from. *They were not charged at that time and we understand that. However, it is my position that, as a matter of fundamental fairness, these counts were resolved as well.* It would be no different if the State, as far as a plea agreement, dismissed a count of stealing only to re-indict on receiving stolen property and say, well, that is not the same charges to dismiss so we can go forward. We have executed an agreement. Mr. Harris stood by his end and the State ought to be obligated to uphold it.

This exchange makes clear that Harris did not argue that all the new charges should be dismissed because they were barred by the contractual terms of the DPA. Instead, he argued that the felony murder and robbery charges were barred by the DPA and the other charges should be dismissed based on "fundamental fairness."

The trial court found that the "agreement was to avoid all risk of trial for the charges of Felony Murder and Robbery 1st" and that the "State must prove up the breach before it may proceed against Harris on charges of Felony Murder and Robbery 1st under the terms of the Deferred Prosecution Agreement." The trial court also found that "the clear terms of the agreement only refer[] to charges of Felony Murder and Robbery 1st" as opposed to referring to "all risk of any trial for any charges stemming from the events of November 19, 2018." This finding is clearly supported by paragraphs 1 and 3 read together of the DPA as set forth above.

The trial court found that Harris had not violated the terms of the DPA. Thus, it dismissed the charges of felony murder and robbery because those charges were barred by the DPA. However, the court allowed the charges of delivery of a controlled substance,

unlawful possession of a firearm, and tampering with physical evidence to proceed even though those charges arose from the events of November 19, 2018 because the DPA only barred charges for murder and robbery. With respect to the charge of armed criminal action, the court permitted the charge based on distribution of a controlled substance but dismissed it based on robbery.

The State filed a new indictment in June 2021. This indictment charged Harris with felony murder, accessory robbery, accessory delivery of a controlled substance, armed criminal action, unlawful possession of a firearm, and accessory tampering with physical evidence. All of these charges stemmed from the events of November 19, 2018.

Harris filed a motion to dismiss the charges of felony murder, robbery, and armed criminal action. Notably, Harris did not ask the trial court to dismiss any of the other pending charges. The armed criminal action charge was premised on robbery and distribution of a controlled substance. In asking for that charge to be dismissed, Harris only asked that it be dismissed "to the extent ACA is predicated on robbery in the first degree." Harris did not ask for the armed criminal action premised on distribution of a controlled substance to be dismissed. Harris did not argue that the DPA barred all charges stemming from the events of November 19, 2018.

In its judgment, the one currently being appealed, the trial court found that Harris did not violate this DPA. It again dismissed the felony murder and robbery charges. It also dismissed the armed criminal action charge based on robbery. The other charges are still pending against Harris. The Respondent's brief filed with this court is the first time I find

11

in the record that any party has argued that the DPA applied to more than the enumerated charges of murder and robbery.

The parties voluntarily entered into the contract and, therefore, should be bound by its terms. The DPA explicitly applies to the enumerated charges of murder and robbery and to the enumerated case which consisted of only those two charges. It is not ambiguous. No party has believed it is ambiguous until the case came before this court. Although it easily could have been drafted to include all charges, as written and agreed upon it does not apply to all charges related to the events of November 19, 2018. I would find that the trial court erred in dismissing Count VIII.

_____
Anthony Rex Gabbert, Judge